UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| DOUG TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:14-cv-00077-RLY-TAB |
| | ) | |
| CITY OF LAWRENCEBURG, DEARBORN COUNTY, STATE OF INDIANA, an Indiana municipal corporation, BOARD OF PUBLIC WORKS AND SAFETY OF THE CITY OF LAWRENCEBURG, DEARBORN COUNTY, STATE OF INDIANA, DENNIS "NUTTY" CARR, in his individual and official capacities as Mayor of the City of Lawrenceburg, Dearborn County, State of Indiana, MARIO TODD, in his individual and official capacities as a member of the Board of Public Works and Safety of the City of Lawrenceburg, Dearborn County, State of Indiana, WILLIAM BRUNER, in his individual and official capacities as a member of the Board of Public Works and Safety of the City of Lawrenceburg, Dearborn County, State of Indiana, DONNIE BRYANT, in his individual and official capacities as a member of the Board of Public Works and Safety of the City of Lawrenceburg, Dearborn County, State of Indiana, and GENE HUNEFELD, JR., in his individual and official capacities as the Chief of Police of the City of Lawrenceburg, Dearborn County, State of Indiana, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

|                  )
| Defendants.     )

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (AND PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT)**

Plaintiff, Doug Taylor, is a former police officer employed by the City of Lawrenceburg who was terminated by the Board of Public Works and Safety ("Board of Works" or "Board") after admitting to crimes of dishonesty under Indiana law. In his Complaint, he brings a claim under 42 U.S.C. § 1983 alleging he was terminated for engaging in speech protected by the First Amendment of the United States Constitution. He also brings state law claims for the violation of his free speech rights under Article 1, Section 9 of the Indiana Constitution, for defamation, and for retaliation under Indiana's Whistleblower statute, Indiana Code § 36-1-8-8. The Defendants herein, the City; the Board of Works; Board of Works' members Mario Todd, William Bruner, Donnie Bryant; the Mayor, Dennis Carr; and the Chief of Police, Gene Hunefeld, Jr., move for summary judgment. Plaintiff cross-moves for partial summary judgment on two issues which will be addressed *infra*. For the reasons set forth below, the court **GRANTS** Defendants' motion and **DENIES** Plaintiff's motion.

**I.   Background**

Plaintiff began working for the Lawrenceburg Police Department ("LPD") in 1991. (Filing No. 121-1, Deposition of Doug Taylor ("Plaintiff Dep.") at 7). On April 11, 2011, in the midst of his campaign for City Council, he attended a campaign function while on duty and in uniform for the LPD. (*Id.* at 14). His time sheet for that day, which he signed, reflected that he was working for the Police Department at the time. (*Id.* at

17). Tim Denning, a local resident, complained about Plaintiff's presence at the event. (*Id.* at 18).

Assistant Chief of Police Donald Combs called Plaintiff into his office with then-Chief Hunefeld, wherein Plaintiff admitted he attended the event. (*Id.* at 21). Combs reprimanded him and told him he would be written up. (*Id.* at 22). Plaintiff apologized and said it would never happen again. (*Id.* at 23).

The Indiana State Police conducted an investigation into the matter which resulted in two charges, Official Misconduct and Ghost Employment, both class D felonies. (*Id.* at 17; Filing No. 121-2, Affidavit of Probable Cause). Dearborn County Prosecutor Aaron Negangard then appointed a special prosecutor, Daniel Sigler. (Filing No. 121-3, Deposition of Aaron Negangard ("Negangard Dep.") at 47).

After charges were filed on October 11, 2011, Plaintiff was placed on administrative leave with pay by the Board of Works. (Plaintiff Dep. at 41; Filing No. 121-4, October 12, 2011 Letter). Newly-elected Mayor Carr and the Board of Works decided to move him to the front desk of the Police Department in January 2012. (Plaintiff Dep. at 43). He also worked in the Civil City Department, Electric Department, and Parks Department. (*Id*. at 43-49).

In November 2011, Dennis Carr and Plaintiff won their respective elections. (*Id*. at 93). Once in office, Plaintiff and Mayor Carr did not see eye-to-eye on certain issues and Plaintiff "voted against [him] on a lot of things." (*Id.*; Filing No. 124-2, Deposition of Dennis Carr ("Carr Dep.") at 23-24). Denning testified at Plaintiff's hearing before the Board that Mayor Carr "indicated he wanted to get rid of [Plaintiff]" and two other

3

members of the Council, and that "he wanted to use a criminal investigation prosecution [sic] to do so." (Filing No. 124-4, Hearing Tr. at 267-68). In addition, Paul Seymour, another local man, testified that the Mayor told him Plaintiff "would be gone at a point." (*Id.* at 265). Plaintiff has no admissible evidence, however, that Mayor Carr influenced how the Board ultimately voted in his termination proceedings. (Plaintiff Dep. at 74).

On March 13, 2013, Plaintiff signed a deferred prosecution agreement in his criminal matter. (Filing No. 121-5, Agreement). In paragraph five of the agreement, he admits that he knowingly committed the offenses charged in the affidavit of probable cause. (*Id.* ¶ 5). Mayor Carr believed Plaintiff's transgressions were serious enough to warrant his removal from the LPD. (Carr Dep. at 38). In addition, Prosecutor Negangard advised he would not take cases from Plaintiff because he admitted to crimes of dishonesty, thus impeding his ability to prosecute criminal cases. (Negangard Dep. at 87, 89, 107).

On March 14, 2013, Plaintiff signed an eleven-page typewritten letter accusing City officials, including the Mayor and members of the Board of Works, of government corruption and criminal activity. (Filing No. 121-8, March 14, 2013 Letter). Plaintiff disseminated the letter to local, state, and federal law enforcement agencies. (*Id.* at 85).

Several days later, the Board of Works met in executive session to discuss what discipline, if any, was appropriate given the fact that Plaintiff had formally admitted to the commission of crimes pursuant to deferred prosecution agreement. (Filing No. 121-10, Deposition of Leslie Votaw ("Votaw Dep.") at 72, 73, 87). On March 20, 2013, the Board notified Plaintiff of its intent to terminate his employment with the LPD, and

4

informed him of his statutory right to a hearing pursuant to Ind. Code § 36-8-3-4. (Filing No. 121-11, March 20, 2013 Letter). After Plaintiff requested a hearing, the Board notified Plaintiff by letter that it intended to hold a hearing on the issue of his termination on April 17, 2013, in the Common Council chambers. (Filing No. 121-12, March 27, 2013 Letter). The Board stated that the "charges against [him] stem from [his] admission and confession in the probable cause affidavit and information in [his] criminal case set out in the Deferred Prosecution Agreement," and that he could be found to have engaged in conduct unbecoming an officer while on or off duty, neglect of duty, using authority for personal ends, etc., in violation of the LPD's Standard Operating Procedures ("SOPs"). (*Id.*)

For several reasons, the hearing was continued to August 28, 2013. One week prior to the hearing, on August 21, 2013, Plaintiff filed a Complaint for Preliminary and Permanent Injunction in the Dearborn Circuit Court, wherein he challenged whether the deferred prosecution agreement constituted a final disposition of his criminal charges under Indiana Code § 36-8-3-4(n), and the Board's authority to hold the hearing in executive session. (Filing No. 121-14, Complaint). In its Order, the court found the parties agreed to hold the termination proceedings in public hearings, and that the deferred prosecution agreement was a disposition of the criminal charges for purposes of the Indiana statute. (Filing No. 121-15, Order). The court therefore concluded that the hearing before the Board may proceed as scheduled. (*Id.*).

After hearing evidence from both sides, the Board voted to terminate Plaintiff. (Plaintiff Dep. at 56-58). On September 26, 2013, the Board issued its Findings of Fact

and Conclusions of Law. (Filing No. 121-17, Findings of Fact and Conclusions of Law). Worthy of note are the following findings and conclusions:

- The Board overruled Plaintiff's objection to the proceedings because the members of the board were biased or prejudiced, as no evidence had been produced to establish the objection. (Procedural Findings # 3).

- Prosecutor Negangard testified he is unwilling to receive information from any officer who has admitted to, or been convicted of, a crime of dishonesty because it makes the prosecution of suspects much more difficult. The Board found his testimony to be credible. (Findings of Fact ("FF") ## 17-18).

- Plaintiff testified that at least two other LPD officers had been convicted of, or admitted to, criminal activity, and nevertheless remained employed. The Board found that the officers, however, did not engage in those activities while on duty and in police uniform, and the officers' crimes did not involve crimes of dishonesty. (FF ## 20-21). This and Prosecutor Negangard's refusal to accept prosecution information from Plaintiff differentiated his situation from other officers who had committed crimes and remained employed. (Conclusion of Law ("CL") # 5).

- Plaintiff suggested the Board commenced termination proceedings only after his March 14 letter. The Board rejected his supposition, finding "there is no causal connection between the March 14 letter and the initiation of termination proceedings against [Plaintiff]." (CL # 6). Instead, it found:

6

> [T]he instant proceedings are causally related to the resolution or disposition of judicial proceedings against [Plaintiff] which occurred only one day prior to the dissemination of the March 14 letter. Specifically, pursuant to Indiana Code § 36-8-3-4(n), [Plaintiff] was subject to criminal charges prior to the execution of the deferred prosecution agreement, such that disciplinary proceedings could not commence until after the execution of the agreement. The Board finds that until [Plaintiff] admitted the elements of his criminal activity in the context of a judicial proceeding, any prior admission by [him] was entitled to less weight.

(*Id.*).

Plaintiff appealed the ruling to the Dearborn Superior Court, but voluntarily dismissed the action to pursue this federal action. (Filing No. 121-18, Order dismissing action; Filing No. 121-19, Transcript of hearing Plaintiff's Motion to Dismiss at 19).

## II. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex v. Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the non-moving party may not rest upon the pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Becker v. Tenenbaun-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990). In deciding whether a genuine issue of material fact exists, the court construes all facts in the light most

favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003).

## III. Discussion

Plaintiff's Section 1983 First Amendment retaliation claims are based on two modes of speech: (1) the March 14 letter and (2) his disagreements with the Mayor, including his votes against the Mayor's agenda. Defendants argue Plaintiff's speech (the letter) is not constitutionally protected, but even if it was, there exists no evidence that his termination was motivated by his speech. They also argue his disagreements with the Mayor due to, *inter alia*, his voting record, have nothing to do with his employment with the City of Lawrenceburg, and therefore, are irrelevant to this lawsuit. Lastly, Defendants argue Plaintiff's First Amendment claims are barred by the doctrine of res judicata. Plaintiff cross-moves for summary judgment on two issues: "Defendants' defense that they would have terminated [Plaintiff] even if he had not engaged in protected activities; and the purported inability of [Prosecutor Negangard] to ever use [Plaintiff's] testimony because [Plaintiff] entered into a Deferred Prosecution Agreement in which he admitted conversion." (Plaintiff's Response at 1-2).

### A. Res Judicata

Under 28 U.S.C. § 1738, federal courts are required to give state court judgments the same preclusive effect as would be given under the law of the state that rendered the judgment. *See Migra v. Warren City Sch. Dist.*, 465 U.S. 75, 81 (1984). Whether

Plaintiff's claims are barred, therefore, turns upon the preclusive effect of the earlier judgment under Indiana law.

Indiana recognizes two doctrines which bar litigation in a subsequent case: (1) res judicata (or claim preclusion), and (2) collateral estoppel (or issue preclusion). Res judicata, also known as claim preclusion, is an equitable doctrine that "bars claims that were litigated or could have been litigated in a previous proceeding." *Arrigo v. Link*, 836 F.3d 787, 798-99 (7th Cir. 2016). Indiana courts apply res judicata only if four elements are satisfied: (1) the former judgment was rendered by a court of competent jurisdiction; (2) the matter now in issue was, or could have been, determined in the prior action; (3) the controversy adjudicated in the former suit was between the parties to the present suit; and (4) the judgment in the former suit was rendered on the merits. *Small v. Centocor, Inc.*, 731 N.E.2d 22, 26 (Ind. Ct. App. 2000). Collateral estoppel "bars subsequent relitigation of a fact or issue where that fact or issue was necessarily adjudicated in a prior cause of action and the same fact or issue is presented in a subsequent suit." *Id*. at 23 (citing *Slutsky v. Crews,* 713 N.E.2d 288, 291 (Ind. Ct. App. 1999)). To invoke the doctrine, the party seeking estoppel must establish that: (1) there has been a final judgment on the merits in a prior action; (2) the issues are identical; and (3) the party to be estopped was a party or in privity with a party in the prior action. *Id.* at 28 (citing *Adams v. Marion County Office of Family and Children,* 659 N.E.2d 202, 205 (Ind. Ct. App. 1995)).

The obvious issue here is the preclusive effect of the Board of Works' Findings of Fact and Conclusions of Law. In *University of Tennessee v. Elliott*, the Supreme Court

held that "when a state agency 'acting in a judicial capacity . . . resolves issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the state's courts." 478 U.S. 788, 799 (1986). "Thus, when a district court reviews claims that were considered in unreviewed agency decisions, issue preclusion applies, so that the court is bound by the agency's findings." *Myers v. Thoman*, No. 1:09-cv-0544-JMS-DML, 2010 WL 3944654, at *5 (S.D. Ind. Oct. 6, 2010) (citing *Elliott*, 478 U.S. at 799). Moreover, Indiana statutory law explicitly renders the Board of Works' decision final and binding if not appealed. Ind. Code § 36-8-3-4(g) ("The decision of the safety board is final and conclusive on all persons not appealing.").

Plaintiff argues his claims are not subject to res judicata because he voluntarily dismissed his state court appeal; thus, there has been no final judgment on the merits of the state court proceeding. The court does not agree. Plaintiff's voluntary dismissal of his appeal is tantamount to no appeal at all. Therefore, the Board of Works' Findings of Fact and Conclusions of Law are final and conclusive.

With respect to the March 14 letter, Plaintiff could have argued before the Board that the Notice of Termination charges were given as a result of his letter, but he didn't raise that claim until he filed the present action. He came close though. Before the Board, he "suggested" that the administrative proceedings were commenced due to the letter. The Board, however, found that the March 14 letter did not have anything to do with Plaintiff's prosecution. (CL #6). He is bound by that finding. Thus, Plaintiff's First Amendment retaliation claim is barred under either res judicata or collateral estoppel.

10

For the same reasons, Plaintiff's cross-motion based on Defendants' defense that the Board would have voted to terminate him even in the absence of his protected activities is barred by collateral estoppel. Defendants' motion for summary judgment on that claim is therefore **GRANTED**.

With respect to his First Amendment claim based on Plaintiff's belief that Mayor Carr wanted him terminated, Plaintiff relies on the testimony of Denning and Seymour, both of whom testified at his termination hearing. To the extent Mayor Carr "wanted to get rid of" Plaintiff, (Hearing Tr. at 268), Denning's testimony refers to Plaintiff's position on the City Council rather than his employment with the City of Lawrenceburg. (*See id*. at 267-68 (Denning testifying that the Mayor "felt like he couldn't get anything accomplished because the council was split," so the Mayor asked him to "gather some information" on Plaintiff and two other City Council members "as a means to get [them] off the city council")). Pursuant to the deferred prosecution agreement, Plaintiff resigned from the City Council and his position on the same is not the subject of this lawsuit.

As noted previously, Seymour testified that the Mayor told him Plaintiff "would be gone at a point." (*Id.* at 265). He interpreted the Mayor's words to mean that Plaintiff's employment with the LPD would end. (*Id.*). The Mayor does not have the authority to terminate Plaintiff's employment with the LPD; only the Board does. (Plaintiff Dep. at 59, 74; Carr Dep. at 12). Plaintiff's claim that the Mayor "was in control of the instrumentality to terminate [Plaintiff's] career" because he appoints the Chief of Police, the Board, and the City Attorney is sheer speculation, as he admitted that he lacks any evidence that Mayor Carr influenced the votes on his termination.

(Plaintiff's Response at 3; Plaintiff Dep. at 74). Indeed, Mayor Carr did not even vote on that topic. (Plaintiff Dep. at 59). Thus, Plaintiff's First Amendment claim based upon his voting record on the City Council is subject to summary dismissal. Defendants' motion for summary judgment on that claim is **GRANTED**.

Finally, Plaintiff challenges at length the fairness of the hearing, arguing in essence that the Defendants and their lawyers were biased against him, engaged in *ex parte* communications, and failed to followed established procedures as required by, *inter alia*, the City's SOPs. This issue was raised and rejected by the Board at Plaintiff's termination proceedings. (Procedural Findings #3). Furthermore, this is an issue that could have, and should have, been raised in his state court appeal. His procedural objection raised in this court is barred by collateral estoppel.

Because Plaintiff's First Amendment retaliation claims are barred, the court need not address the merits of those claims. Defendants' Motion for Summary Judgment on those claims is **GRANTED**, and Plaintiff's Cross-Motion for Summary Judgment is **DENIED**.

### B. State Law Claims

Plaintiff also brings three state law claims for : (1) defamation, (2) violation of his free speech rights under the Indiana Constitution, and (3) violation of the Indiana Whistleblower Statute. Although there is no federal claim left upon which the court may assert original jurisdiction over Plaintiff's state law claims, the court elects to take supplemental jurisdiction over them as they arise out of the same set of facts, substantial

judicial resources have been allocated to this case, and remanding the case to state court at this late juncture would be unfair to the parties. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997); *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1252 (7th Cir. 1994).

### 1. Immunity

Defendants first argue they have immunity for any state law claims against them under Indiana Code § 34-13-3-5(b), which provides, in relevant part: "[a] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." Plaintiff's Complaint names each individual Defendant in the scope of his employment for the City of Lawrenceburg. (Filing No. 1, Compl. ¶¶ 8-13). Indeed, Plaintiff alleges that all individual Defendants acted "under authority or color of state law" in terminating Plaintiff. (*Id.* ¶¶ 14, 17). Therefore, they are entitled to immunity. But even if the court were to rule on Plaintiff's state law claims, they would fail as a matter of law for the reasons explained below.

### 2. Defamation

To establish a claim of defamation, a "plaintiff must prove the existence of 'a communication with defamatory imputation, malice, publication, and damages.'" *Trail v. Boys & Girls Clubs of N.W. Ind.,* 845 N.E.2d 130, 136 (Ind. 2006) (quoting *Davidson v. Perron,* 716 N.E.2d 29, 37 (Ind. Ct. App. 1999), *trans. denied* ). A statement is defamatory if it tends "to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person." *Kelley v. Tanoos,* 865 N.E.2d 593, 596 (Ind. 2007). Truth is a complete defense

13

to a claim of defamation. *Gatto v. St. Richard School, Inc.*, 774 N.E.2d 914, 924 (Ind. Ct. App. 2002).

Plaintiff claims the Board defamed Plaintiff when it stated in its Findings of Fact and Conclusions of Law that that Plaintiff could not testify as a credible witness in a court due to the admissions contained in the deferred prosecution agreement because, pursuant to Indiana Trial Rule 608(b), his prior admissions would not be admissible in evidence. In its Findings of Fact and Conclusions of law, the Board credited the testimony of Prosecutor Negangard wherein he expressed his unwillingness to receive information from an officer who had admitted to a crime of dishonesty because it makes the prosecution of accused suspects much more difficult. (FF # 17). This is a true fact. Whether the deferred prosecution agreement is admissible in a court of law is beside the point. Accordingly, the court **GRANTS** Defendants' motion for summary judgment on Plaintiff's defamation claim, and **DENIES** Plaintiff's cross-motion on the "purported inability of the local Prosecutor to ever use [Plaintiff's] testimony" because he signed the deferred prosecution agreement.

### 3. Free Speech Claim

The Indiana Supreme Court held in *Cantrell v. Morris* that there is no private right of action for monetary damages under Article 1, Section 9 of the Indiana Constitution for the violation of his free speech rights. 849 N.E.2d 488, 492 (Ind. 2006). In apparent recognition of the Court's holding, Plaintiff maintains he can bring a claim for wrongful discharge based on the exercise of his constitutional rights. *See id.* at 498 (noting "the tort of wrongful discharge can be based on termination for exercise of a constitutional as

14

well as a statutory right"). However, as noted several times in this opinion, the Board determined Plaintiff was not terminated for the exercise of his free speech rights. Therefore, Defendants' motion for summary judgment on Plaintiff's claim under Article 1, Section 9 of the Indiana Constitution is **GRANTED**.

### 4. Indiana Whistleblower Statute

Plaintiff alleges Defendants terminated him for exercising his statutory rights under Indiana Code Section 36-1-8-8. This statute protects public employees from discipline for reporting violations of law and misuse of public funds. Defendants argue Plaintiff is precluded from bringing this claim because the statute does not provide him with a private right of action. In a previous case decided by this court, it concluded "that the plain language of the statute clearly limits [Plaintiff's] remedy to appealing any disciplinary action pursuant to the procedures set forth by personnel policy or collective bargaining agreement." *Kodrea v. City of Kokomo, Ind.*, 458 F. Supp. 2d 857, 874 (S.D. Ind. 2006) (citing Ind. Code § 36-1-8-8). As with his free speech claim under the Indiana Constitution, Plaintiff recasts his claim as one for wrongful discharge. Because the Board determined there was no causal connection between the March 14 letter and his termination, this claim must also fail as a matter of law.

## V. Conclusion

The court finds there is no genuine issue of material fact in support of Plaintiff's claims. Accordingly, Defendants' Motion for Summary Judgment (Filing No. 120) is **GRANTED** and Plaintiff's Cross-Motion (Filing No. 124) is **DENIED**.

**SO ORDERED** this 16th day of June 2017.

                                        RICHARD L. YOUNG, JUDGE
                                        United States District Court
                                        Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.